*455
 
 Taylor, Chief-Justice.
 

 I think there was no neccs-sity to conclude the indictment against the fora of the statute» for
 
 r.
 
 law of paramount obligation to the statute was \ioiaied by the offence, the Common Law, founded upon the law of'nature, and confirmed by revelation,, The opinion 1 delivered in
 
 The State
 
 v.
 
 Boon,
 
 remains unchanged, to which, and the effect of Use act of 1817, as stated in
 
 Stale
 
 v.
 
 Tackett,
 
 (l Hawks, 218.) I. beg leave to refer, as containing the reasons wherefore, in this case* there ought to bo judgment for the State.
 

 Henderson, Judge.
 

 This record presente the question, is the killing of a slave at this day a statute or Common Law offence ? And if a Common Law offence,» what punishment is aífised to the act charged in this record ? Homicide is the kilting any reasonable creature. Murder is the kilting any reasonable creature within the protection of the Law, with malice prepense, that is, with design and without excuse. That a slave is a reasonable, or more properly a human being, is not, 1 supnose, denied. But it is said, that being property, he is not within the protection of the law, and therefore the law regards not the manner of Lia death $ that the owner «lone is interested, aud the State no more concerned, independently of the acta of ike Nyúdaliire on that subject, than in the death ef
 
 &
 
 Ijonxv This is argument, the farce of which 1 cannot fed, and leads to consequences abhorrent to my nature yet if it be the ];>,\v of the land, it must be so pronounced. 1 disci aim rl? rules or laws in investigating titia question, but the Common Law of England, as brought to this country by oar iaxvíaihers when they emigrated hither, and as adopted by them, and as modified by various declarations of the Legislature since, so as to jutify the foregoing deúüiition. If, therefore, a slave is a reasonable creature, within the protection of the law, the kilting a slave with malice prepense, is murder by the Common
 
 *456
 
 Law. With the services and labours of the slave, the law has nothing to
 
 do;
 
 they are the master’s by the law, the government and controul of them belong exclusively to him. Nor will the law interfere upon the ground that the State’s rights, and not the master’s, have been violated.
 

 In establishing slavery, then, the law” vested in th© master, the absolute and uncontrolled right to the services of the slave, and the means of enforcing those services follow as necessary consequences, nor will the law weigh with the most scrupulous nicety his acts in relation thereto
 
 ;
 
 but the life of a slave being no ways necessary to be placed in the power of the owner for the full enjoyment of his services, the law takes care of that, and with me it has no weight to shew, that by the laws of ancient Rome or modern Turkey, an absolute power is given to the master over the life of his slave: — I answer, these are not the laws of our country, nor the model from which they were taken; it is abhorrent to the hearts of all those who have felt the influence of the mild precepts of Christianity
 
 ;
 
 and if it is said, that no law is produced to shew that such is the state of slavery in our land, I call on them to shew the law by which the
 
 life
 
 of a slave is placed at the disposal of his master. In addition, I must say, that if it is not murder, it is no offence, not even a hare trespass. Nor do I think that any thing should be drawn from the various acts of the Legislature on the subject. Legislative exposition is good while the system of law thus expounded is in force ; but when the whole system is abandoned, as is done by the act of 1817", the exposition should be laid aside. But if legislative exposition is to have weight, the last should be received, and the act last mentioned speaks the language of declaration, and not that of enactment. But it is not admit - ted that the acts prior to the act of 1817, are by any means a clear legislative declaration that it was no of-fence to kül a slave anterior to any statutory provision,
 
 *457
 
 The first enactment that we have on the subject, is a simple declaration, that if any person shall maliciously kill a slave, he shall suffer imprisonment j from this we are not absolutely to conclude, that the Legislature thought that before that time it was no offence; it is 'quite, possible that Juries had not applied the principles of the Common Law in their purity to the offence ; for we see the spirit of the limes by the legislative act, but that spirit is happily no more. S would mention, as an additional argument, that if the contrary exposition of the law is correct, then the life of a slave is at the mercy of any one, even a vagabond , and 1 would ask, what law is it that punishes at this day the most wanton and cruel dismemberment of a slave, by severing a limb from Ms body, if life should be spared 1 There is no statute on the subject, it is the Common Law, cut down, it is true, by statute or custom, so as to tolerate slavery, yielding to the owner the services of the slave, and any right incident thereto as necessary for its full enjoyment, but protecting the life and limbs of the human being j and in these particulars, it does not admit that he is without the protection of the law*. I think, therefore, that judgment of death should be pronounced against the" prisoner.